# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:10-CR-109 |
| | ) | (2:13-CV-182) |
| ANTONIO GUDINO | ) | |
|  a/k/a "Chronic", | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the: Motion Under 28 U.S.C. Section 2255 To Vacate, Set Aside, Or Correct Sentence By a Person in Federal Custody, filed by Antonio Gudino on May 29, 2013 (DE #944). For the reasons set forth below, the section 2255 motion is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **ORDERED** to distribute a copy of this order to Antonio Gudino, #11907-027, McCreary USP, US Penitentiary, Inmate Mail/Parcels, P.O. Box 3000, Pine Knot, KY 42635, or to such other more current address that may be on file for the Petitioner. Further, this Court declines to issue Defendant a certificate of appealability.

BACKGROUND

On November 16, 2011, a Third Superseding Indictment was filed

against Defendant, Antonio Gudino a/k/a "Chronic", and twenty other defendants.[1] (DE #230). Gudino was charged in Count One and Count Two of the 15-count Third Superseding Indictment. Count One charged Gudino and others with conspiracy to participate in racketeering activity in violation of 18 U.S.C. § 1962. Count Two charged Gudino and others with conspiracy to possess with intent to distribute and distribute cocaine and marijuana in violation of 21 U.S.C. § 846.

On July 24, 2012, Gudino entered into a plea agreement with the Government, and the agreement was filed with this Court. (DE #495). In it, Gudino agreed to plead guilty to Count One of the Third Superseding Indictment, and the Government agreed to move to dismiss Count Two at the time of the sentencing. (*Id.*, ¶¶ 7(a) and 8). The Government and Gudino also reached certain agreements that were not binding on the Court. (*Id.*, ¶ 9). Specifically, they agreed that, "considering the totality of the circumstances for my involvement in the offense charged in Count One, that a just and appropriate sentence as to a term of imprisonment is a period of 120 months." (*Id.,* ¶ 9(e)). Additionally, they agreed that if Defendant continued to accept responsibility for his criminal conduct, he should receive a two point, and if eligible, an additional one point reduction in his Guideline offense level.

---

[1] The case had a total of 23 defendants, but two plead guilty prior to the filing of the Third Superseding Indictment.

(*Id.*, ¶ 9(a)). They also agreed that Gudino was responsible for the following drug quantities: 150 kilograms or more of a mixture or substance containing a detectable amount of cocaine and 1000 kilograms or more of a mixture and substance containing a detectable amount of marijuana. (*Id.*, ¶ 9(b)). Furthermore, Gudino and the Government agreed that Gudino possessed a firearm in connection with the offense and that Gudino should receive a two-level reduction in offense level for being a minor participant in the criminal activity. (*Id.*, ¶ 9(c)-(d)). In exchange for these benefits, the plea agreement contained the following wavier:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed; I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offenses as set forth in this plea agreement; with this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, Unites States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, Unites States Code, Section 2255.

(*Id.*, ¶ 10).

Further, Defendant agreed that his attorney had "done all that

anyone could do to counsel and assist [him]," that he was offering his guilty plea "freely and voluntarily and of [his] own accord," that "no promises [had] been made to [him] other than those contained in [the] agreement," and that he had not been "threatened in any way by anyone to cause [him] to plead guilty in accordance with [the] agreement." (*Id.*, ¶¶ 14-15).

This Court held a change of plea hearing on July 31, 2012. (DE ##514, 968). When asked whether he was "fully satisfied with the counsel, representation, and advice given to you in this case by Mr. Earnst as your attorney?" Gudino replied "yes, Your Honor." (DE #968, p. 14). After Gudino read through paragraphs 7 through 13 of his plea agreement, the Court asked him whether he read it previously, understood it, agreed with it, and was asking the Court to approve it. Gudino answered yes to each of these questions. (*Id.*, pp. 14-15). Gudino acknowledged repeatedly that he agreed with the individual and collective terms of the plea agreement and confirmed that he wanted to plead guilty under the agreement. (*Id.*, pp. 14-52).

The Court informed Gudino that for Count One, "the most that you could get would be life imprisonment, a fine of up to $250,000, or a combination of both, up to five years of supervised release, full restitution and a $100 special assessment," and Defendant answered that he understood. (*Id.*, p. 19). Additionally, the Court advised Defendant that "[t]he least you could get would be

4

probation, no fine, no supervised release, no restitution, but you still would have a $100 special assessment," and Defendant indicated that he understood. (*Id.*, p. 19).

The Court also confirmed that Gudino understood that the Court would ultimately decide Defendant's sentence and that neither the Government's recommendations nor the Guidelines were binding. (*Id.*, pp. 21-31). This included clear notification that the Government's recommendation that Gudino be sentenced to a term of imprisonment of 120 months was not binding on the Court. (*Id.*, pp. 29-30). The following exchange occurred:

> Q: Last nonbinding recommendation that you and the government are going to make is that considering the totality of the circumstances for your involvement in the offense in Count One, that you should get a term of imprisonment of 120 months. Do you understand that?
>
> A:    Yes, Your Honor.
>
> Q:    You understand this is only a recommendation, nothing more.
>
> A:    Yes, Your Honor.
>
> Q:    Who makes the final decision?
>
> A:    You do, Your Honor.
>
> Q:    And you understand that I have the authority to sentence you up to the amount of the statute, life imprisonment. Do you understand that?
>
> A:    Yes, Your Honor.
>
> Q:    Are you in agreement with that?
>
> A:    Yes, I am.

(*Id.*).

During the hearing, this Court questioned Gudino extensively about his voluntary waiver of his right to appeal, including the following excerpts from that colloquy:

> Q: Okay. Subparagraph 10 talks about appeals. Mr. Gudino, do you understand that in all criminal cases a defendant has a right to appeal his conviction and/or sentence in a case?
>
> A: Yes, Your Honor.
>
> Q: In this case, you have acknowledged that I have the jurisdiction and authority to sentence you up to the maximum provided for by the statute. Remember you and I talked about that when I told you you were facing up to life imprisonment, a fine of up to $250,000, or a combination of both, up to five years of supervised release, full restitution and a $100 special assessment. Do you understand that?
>
> A: Yes, Your Honor.
>
> Q: What you're doing in this paragraph, Mr. Gudino, is that you're giving up all of your rights to an appeal, both as to the manner in which you were found guilty or as to the sentence you might receive. Do you understand that?
>
> A: Yes, Your Honor.
>
> Q: For all practical purposes, you're giving up all of your rights to an appeal. Do you understand that?
>
> A: Yes, Your Honor.
>
> Q: That includes incompetence of counsel except as it relates to this wavier and/or its negotiation. Do you understand that?
>
> A: Yes.

Q:   Do you understand that the government is not giving up any of their rights to an appeal?

A:   Yes, Your Honor.

Q:   Are you sure this is what you want to do, Mr. Gudino?

A:   Yes, I do, Your Honor.

Q:   You understand that down the road you're not going to be able to change your mind?

A:   I'm sure.

Q:   And do you understand that if I sentence you, you're not going to be able to talk to Mr. Earnst and say, that judge went crazy on me, I want you to go and appeal?  You won't have any right to an appeal anymore.  Do you understand that?

A:   Yes, Your Honor.

Q:   Did you consult with your attorney before making this decision?

A:   Yes, I did, Your Honor.

Q:   Did he answer all of your questions?

A:   Yes, he did.

Q:   Have any questions for the Court?

A:   (Indicating).

(WHEREUPON, discussion was had off the record between counsel and defendant.)

BY THE DEFENDANT:

A:   No, I don't, Your Honor.

BY THE COURT:

Q:   Are you doing this knowingly and voluntarily?

```
          A:    Yes, Your Honor.

          Q:    And are you asking me to approve it as part of
                the plea agreement?

          A:    Yes, Your Honor.
```

(*Id.*, pp. 30-32).

On January 10, 2013, the Court sentenced Gudino.  (DE ##736, 969).  There were two objections to the Guideline calculation set forth in the Presentence Report (*see* DE #672).  Defendant objected to the application of an enhancement for obstruction of justice, and to the withdrawal of acceptance of responsibility.  (*Id.*).  The Court overruled the objections.  (DE # 969 at 11).  The Government recommended a sentence of 120 months, as it had agreed to do in the Plea Agreement.  (*Id.,* pp. 26-27).  This Court, however, sentenced Gudino to imprisonment for 175 months.  (DE #736).  Additionally, the Court granted the Government's motion to dismiss Count Two of the Third Superseding Indictment.  (DE #737).  Judgment was entered on January 14, 2013.  (DE #740).

On January 24, 2013, Gudino filed a notice of appeal.  Gudino later moved to dismiss the appeal, and the appeal was dismissed. (DE # 769-1).

Gudino filed the instant motion under section 2255 on May 29, 2013, setting forth several arguments why his counsel was ineffective:  (1) he "did not provide counsel during the PSI interview"; (2) he "failed to explain the consequences of a guilty plea on my immigration status"; (3) he "failed to hold Government

to the plea agreement that was signed and entered on the record";
(4) he "failed to inquire into my mental state by obtaining a
psychological examination." (DE #944). It is possible Gudino
intended to bring a claim based on limited access to the law
library as well, although he does not make that entirely clear in
his motion. In response, the Government contends that all of
Gudino's arguments were waived, and even if they were not waived,
they fail on the merits. (DE #995). Gudino was granted a lengthy
extension of time to file his reply brief, but he opted not to file
a reply. (DE #1032). Therefore, this motion is fully briefed and
ripe for adjudication.


DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved
for "extraordinary situations." *Prewitt v. United States*, 83 F.3d
812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus
motion pursuant to 28 U.S.C. section 2255, a federal prisoner must
show that the district court sentenced him in violation of the
Constitution or laws of the United States, or that the sentence was
in excess of the maximum authorized by law, or is otherwise subject
to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor
recapitulation of a direct appeal. *Id.; Belford v. United States*,
975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by
Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a

result:

> [T]here are three types of issues that a
> section 2255 motion cannot raise: (1) issues
> that were raised on direct appeal, absent a
> showing of changed circumstances; (2)
> nonconstitutional issues that could have been
> but were not raised on direct appeal; and (3)
> constitutional issues that were not raised on
> direct appeal, unless the section 2255
> petitioner demonstrates cause for the
> procedural default as well as actual prejudice
> from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Defendant's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773

F.2d 1026, 1027 n.1 (9th Cir. 1985)).  In other words:

> The mandated liberal construction afforded to
> pro se pleadings "means that if the court can
> reasonably read the pleadings to state a valid
> claim on which the [petitioner] could prevail,
> it should do so despite the [petitioner's]
> failure to cite proper legal authority, his
> confusion of various legal theories, his poor
> syntax and sentence construction, or his
> unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas

petition from state court conviction) (alterations in original)

(quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

On the other hand, "a district court should not 'assume the role of

advocate for the pro se litigant' and may 'not rewrite a petition

to include claims that were never presented.'"  *Id.*  Here, the

Court assessed Gudino's claims with these guidelines in mind.


Waiver

    The Seventh Circuit has recognized the validity of plea

agreement waivers and will enforce the waiver unless there is a

claim that the waiver was entered into involuntarily or that the

waiver was a result of the ineffective assistance of counsel during

the negotiation of the waiver.  In *Jones v. United States*, 167 F.3d

1142, 1145 (7th Cir. 1999), the Seventh Circuit held that only two

claims could be raised on a section 2255 motion by an individual

who waived his right to appeal:  (1) the defendant received

ineffective assistance of counsel in negotiating the waiver; or (2)

that the waiver was not knowingly and voluntarily made.  *Jones*

stated that courts should be:

> [m]indful of the limited reach of this
> holding, we reiterate that waivers are
> enforceable as a general rule; the right to
> mount a collateral attack pursuant to § 2255
> survives only with respect to those discrete
> claims which relate directly to the
> negotiation of the waiver.

*Id.* at 1145. In *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000), the Seventh Circuit applied its holding in *Jones* to bar an ineffective assistance of counsel claim that related only to the petitioner's performance with respect to sentencing. The Court found that "[b]ecause the challenge has nothing to do with the issue of a deficient negotiation of the waiver, [petitioner] has waived his right to seek post-conviction relief." *Id.* Additionally, the Court stated that the following analysis should be considered in determining whether a claim has been waived:

> can the petitioner establish that the waiver
> was not knowingly or voluntarily made, and/or
> can he demonstrate ineffective assistance of
> counsel with respect to the negotiation of the
> waiver?

*Id.*

It is undisputed that in his plea agreement, Gudino waived his right to appeal or contest his conviction and sentence "to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under . . . Title 28, United States Code, Section 2255." (DE #495, ¶ 10).

12

This Court is satisfied that Defendant knowingly and intelligently waived his right to seek post-conviction relief. *See, e.g., United States v. Davis*, 348 F. Supp. 2d 964, 966 (N.D. Ind. 2004) (finding, under a similar section 2255 waiver, that defendant knowingly and intelligently waived his right to file a section 2255 motion). To the extent that Defendant now argues to the contrary, "[s]elf-serving statements offered after the plea hearing generally fall in the face of contradictory voluntary statements made by the defendant during a plea hearing - the latter are presumed to be true." *United States v. Mosley*, No. 93-1829, 1994 WL 503016, at *3 (7th Cir. Sept. 14, 1994) (citing, *inter alia, United States v. Scott*, 929 F.2d 313, 315 (7th Cir. 1991) ("To allow [defendant] to withdraw his plea because of secret expectations that he harbored in the face of his directly contradictory sworn testimony would undermine the strong societal interest in the finality of guilty pleas.")). As set forth by the Court earlier in this opinion, Defendant repeatedly testified during his hearing that he was satisfied with his counsel's performance, that he was knowingly and voluntarily pleading guilty, and that he understood the charges against him and the possible sentence he was facing. As such, the Court is satisfied that he knowingly and intelligently entered into the plea agreement.

Furthermore, none of Gudino's claims of ineffective assistance relate directly to the waiver or its negotiation. The PSI interview that Gudino complains about happened well after the

waiver was negotiated. Any failure to explain the consequences of a guilty plea on immigration status are unrelated to the waiver of appeal rights. *See United States v. Clarke*, No. 11 C 7404, 2012 WL 588708 *4 (N.D. Ill. Feb. 16, 2012 aff'd 703 F.3d 1098 (7th Cir. 2013)(holding that a similar claim was waived and that petitioner had made no allegations related to the negotiation of her waiver). Any failure to hold the Government to the plea agreement is not related to the waiver or its negotiation. And, any failure to investigate Gudino's mental health and utilize that information to argue that it provided a mitigating consideration for sentencing has nothing to do with the waiver or its negotiation. If Gudino intended to make a claim based on limited access to a law library, as the Government has suggested, that claim too is unrelated to the waiver or its negotiation. Accordingly, each and every one of Gudino's arguments are waived.


## Gudino's Ineffective Assistance of Counsel Claims Fail on the Merits

Even if Gudino's arguments were not waived, they would fail on the merits. Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell below an objective

standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The second *Strickland* prong requires defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted). A defendant must establish specific acts or admissions that fall below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Canaan v. McBride*, 395 F.3d 376, 385-86 (7th Cir. 2005). Additionally, trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the

15

benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689).

Gudino's first claim of ineffective assistance of counsel is based on a failure to provide counsel during the PSI interview. Gudino supports his claim as follows:

> [T]he attorney was ineffective because he knew or should have known that I was not born in the United States. But he failed to stop me or inform me of the consequences of not being honest with the probation officer even though he was present when the probation officer asked where I was born.

(DE #944, p. 4). The Government has produced evidence that the performance of Attorney Earnst was not deficient. In a sworn declaration, Attorney Earnst represents that his client told him repeatedly that he was in the United States legally. (DE #995-1). Furthermore, he was present at the interview and advised Gudino of the consequences of failing to be honest with the probation officer. (*Id.*). Gudino chose not to file a reply brief and has offered no evidence whatsoever in rebuttal. Accordingly, this claim is without merit.

Next, Gudino argues that his counsel was ineffective for failing to advise him of the consequences of a guilty plea on his immigration status. More specifically, he alleges that:

> He did not properly explain the plea agreement and the deportation issues to me before I entered into the plea agreement. All he told me is if I didn't take this plea we will have to go to trial.

(DE #944 at 5).

In *Padilla v. Kentucky*, the Court held that "counsel must inform [a] client whether his plea carries a risk of deportation." 130 S.Ct. 1473, 1486 (2010). But, here, Gudino lied to all parties involved about his immigration status, including his attorney. (DE #995-1). At his change of plea hearing, Gudino was advised that he was under oath and if he answered any questions falsely, he could be prosecuted for perjury. (DE #968 at 11). On that very same page of the transcript, the record shows that Gudino gave a social security number which he later conceded was false. (*Id.;* DE #724). Gudino was specifically asked if he was a citizen of the United States, and he said "Yes, Your Honor." (DE #968 at 12). Likewise, he told employees of U.S. Probation and Pretrial Services at both his bond interview and his presentence interview that he was born in Chicago, Illinois on August 26, 1981. (DE #671 at 14).

Given that his own lies, now admitted to, contributed to the failure to be properly advised under *Padilla*, it is not clear he can show that counsel was ineffective. But, even if he could, he must also show prejudice. In circumstances such as this, a petitioner must show the Court that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S.Ct. at 1485. A petitioner's subjective assertion that he would have insisted on a trial is not enough, but here, Gudino has not even asserted that he would have went to trial if he had known the immigration consequences of a guilty plea. Accordingly, this claim fails on the merits.

Gudino also argues that counsel was ineffective because he did not hold the Government to the terms of the plea agreement. More specifically:

> The attorney was ineffective because he allowed the government to change the plea agreement to a less advantageous plea agreement after the first plea was signed and entered on the record, see dkt# 495.

(DE #944 at 7). First, the *only* plea agreement on the record with regard to Gudino is the one he references above, filed as docket entry number 495. And, despite Gudino's perjury, the Government *still* recommended a sentence of 120 months:

> I realize that the Court is correct in taking away his acceptance of responsibility and in giving him the points for obstruction. It seems to me –I mean, legally, it's correct. I believe that was sort of an overly harsh result in this case. And as Mr. Earnst said, it's not –I don't think it's fair to treat him the same as someone that went to trial. Lying to probation about immigration status isn't the same as putting the government through a –- and the Court through a lengthy trial.
>
> Mr. Cooley and I have had this case for a number of years. We have a good sense of the criminal conduct of each and every one of the defendants. We discussed this one at length and felt that 120 months is a just sentence for this defendant based upon his criminal history and his conduct in this case, and I would ask that you honor the plea agreement. And I still, even despite lying to probation, still ask the Court that they sentence him to 120 months.

(DE #969 at 27). Gudino's claim fails: he has pointed to no failure to abide by the plea agreement on the part of the Government.

Gudino also argues that his counsel was ineffective in that he failed to inquire into his mental state by obtaining a psychological examination. Gudino believes such an exam would have documented mental health problems that would have justified a lesser sentence. Other than Gudino's cursory and vague assertion that he has "documented mental health problems," he has offered nothing whatsoever that would indicate a mental health exam would have been appropriate, much less necessary, for counsel to be deemed effective. Gudino is required to reasonably competent assistance of counsel, not perfect assistance. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 791 (2011). Even if, with hindsight, a mental exam may have been valuable, to conclude that the failure to obtain one is prejudicial error would be speculative at best on the record before this Court.

Gudino mentions several times in his motion that he has had limited access to a law library while incarcerated. He does not state this as a separate claim, but the Government has treated it as such so the Court will address the claim briefly. There is no federal constitutional right to browse the library; indeed, there is no "abstract, freestanding right to a law library . . .." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). If construed as a claim that he was denied access to the Courts, Gudino would need to show that he suffered actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds v. Smith*, 430 U.S. 817 (1977), did not

eliminate the actual-injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). Gudino's motion does not include such allegations.

Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Gudino has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

CONCLUSION

For the aforementioned reasons, Defendant's section 2255 motion is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. Further, this Court declines to issue Defendant a certificate of appealability. The Clerk is **ORDERED** to distribute a copy of this order to Antonio Gudino, #11907-027, MC Creary USP, US Penitentiary, Inmate Mail/Parcels, P.O. Box 3000, Pine Knot, KY 42635, or to such other more current address that may be on file for the Petitioner.

**DATED: December 16, 2014**          **/s/ RUDY LOZANO, Judge**
                                      **United States District Court**